UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case #: 5:23-cv-00135

| | |
|---|---|
| **JAMES COLEMAN**, *on behalf of himself and all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>**MEDWATCHERS INC.**,<br><br>*Defendant*. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant Medwatchers Inc.'s practice of making pre-recorded calls to consumers *without their consent* in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Medwatchers Inc. ("Medwatchers" or "Defendant") is a medication therapy management (MTM) company.

3. Medwatchers provides MTM services to patients on behalf of its provider partners such as Anthem and Humana.[1]

4. MTM services are completely optional and may be declined by patients at any time, and Medicare guidance requires that all consumer requests to be opted-out of such services be documented and honored.

5. Mr. Coleman is not a patient of Medwatchers.

6. Mr. Coleman has no relationship with Medwatchers.

7. Mr. Coleman did not provide consent to Medwatchers for any telephone calls.

---

[1] *See* https://www.medwatchers.com/trusted-vendor-validation (last accessed March 15, 2023).

8. Mr. Coleman did not provide consent to Humana, his health insurer, for any telephone calls by Medwatchers.

9. Mr. Coleman requested to be opted-out of the optional MTM program and should not have received <u>any</u> calls about the optional MTM program.

10. The internal records of both Medwatchers and Humana will reveal the precise dates and times that Mr. Coleman requested to be opted out of the optional MTM program.

11. Mr. Coleman received numerous prerecorded calls from Medwatchers and repeatedly requested that the calls stop.

12. Mr. Coleman received numerous prerecorded calls from Medwatchers after he requested to be opted out of the optional MTM program.

13. Mr. Coleman received numerous prerecorded calls from Medwatchers after he requested that the calls stop.

14. Mr. Coleman communicated his requests that the calls stop to both Medwatchers and Humana, his insurance provider, yet the calls continued.

15. The internal records of both Medwatchers and Humana will reveal the precise dates and times that Mr. Coleman requested that calls stop.

16. Accordingly, Mr. Coleman brings this TCPA action on behalf of himself and a class of similarly situated individuals under 47 U.S.C. § 227(b).

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

18. This Court has jurisdiction over Medwatchers because Medwatchers regularly conducts business transactions in this District, has committed tortious acts in this District, and

purposefully directed its calling activities at residents within this District.

19. Venue is proper in this District because Medwatchers conducts significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

**PARTIES**

20. Mr. Coleman is, and at all times mentioned herein was, a citizen and resident of North Carolina.

21. Mr. Coleman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. Medwatchers Inc. is, and at all times mentioned herein was, a California corporation headquartered at 11975 El Camino Real #101, San Diego, California 92130.

23. Medwatchers is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**GENERAL FACTUAL ALLEGATIONS**

24. Medicare Part D sponsors must establish a Medication Therapy Management (MTM) program.

25. Part D sponsors auto-enroll targeted beneficiaries each year when they meet certain eligibility criteria; however, the enrolled beneficiaries may refuse or decline individual services at any time.[2]

26. Part D Sponsors are expected to honor all requests to opt-out of the plan's MTM program.[3]

---

[2] *See, e.g.,* CY 2020 Medication Therapy Management Program Guidance and Submission Instructions, available at: https://www.cms.gov/Medicare/Prescription-Drug-Coverage/PrescriptionDrugCovContra/Downloads/Memo-Contract-Year-2020-Medication-Therapy-Management-MTM-Program-Submission-v-041019-.pdf (last accessed March 15, 2023).

[3] *See id.* at 4-5.

27. The Centers for Medicare & Medicaid Services ("CMS") "expects sponsors to maintain documentation of beneficiary requests to opt out of the MTM program."[4]

28. According to CMS, sufficient documentation includes "beneficiary opt out forms or mainframe documentation from calls including the date, time and the name of the person requesting to opt out."[5]

29. Further, CMS requires that Part D Sponsors report to CMS the opt-outs and related information about the MTM and Comprehensive Medication Reviews.[6]

30. Upon information and belief, Humana contracted with Medwatchers to contact Humana Medicare Advantage members to provide optional MTM services.

31. Medwatchers makes prerecorded calls regarding such MTM services to consumers who were auto-enrolled into such program by Humana.

32. These telephone calls come from 855-287-1403.

33. These calls play the following prerecorded message:

> Hi there. My name is Alex. I'm a pharmacist calling on behalf of Humana to do a medication review and update with you. Please call us back at 855-287-1403. Text telephone users may call 711. I look forward to speaking with you soon. Thank you and have a great rest of your day.

34. Upon information and belief, Humana and Medwatchers document opt-out/do-not-call requests but fail to communicate that information between themselves, resulting in the continuance of unwanted calls.

35. For example, if Humana receives a do-not-call request and/or an opt-out request, Humana documents it but does not provide Medwatchers with that same information or instruct

---

[4] *Id.* at 4.
[5] *Id.* at 5.
[6] *See* https://www.cms.gov/files/document/cy2022part-d-reporting-requirements012022.pdf-0 (last accessed December 15, 2022)

Medwatchers to stop calling a beneficiary that has opted-out or requested not to be called.

36. Humana has a duty to provide such information to its vendors, including Medwatchers, to prevent unwanted calls to its beneficiaries.

## JAMES COLEMAN'S FACTUAL ALLEGATIONS

37. Mr. Coleman is the user of a cellular telephone.

38. Mr. Coleman's cellular telephone is not associated with a business and is used for personal purposes.

39. Mr. Coleman registered his telephone number on the National Do Not Call Registry on February 10, 2005.

40. Mr. Coleman received numerous automated calls from Medwatchers that played the prerecorded message described above on at least the following dates and times:

- March 11, 2022 at 11:11am;
- May 16, 2022 at 4:58pm;
- June 2, 2022 at 11:46am;
- June 17, 2022 at 10:20am;
- June 20, 2022 at 4:46pm;
- June 23, 2022 at 6:38pm;
- June 27, 2022 at 4:20pm;
- July 5, 2022 at 12:25pm;
- July 20, 2022 at 12:24pm;
- July 25, 2022 at 3:11pm;
- August 13, 2022 at 11:41am; and
- August 24, 2022 at 4:58pm.

41. Mr. Coleman has no relationship with Medwatchers.

42. Mr. Coleman did not provide consent to Medwatchers for any telephone calls.

43. Mr. Coleman did not provide consent to Humana, his health insurer, for any telephone calls by Medwatchers.

44. Mr. Coleman repeatedly advised Medwatchers and Humana that he was not interested in the service and requested to be removed from the calling lists.

45. Mr. Coleman continued to receive calls from Medwatchers.

46. Mr. Coleman received numerous prerecorded calls from Medwatchers after he requested to be opted out of the optional MTM program.

47. Mr. Coleman received numerous prerecorded calls from Medwatchers after he requested that the calls stop.

48. Medwatchers and Humana each maintain records of Mr. Coleman's requests to opt-out of the program and that he receive no further calls.

49. The internal records of both Medwatchers and Humana will reveal the precise dates and times that Mr. Coleman requested to be opted out of the optional MTM program.

50. Mr. Coleman also advised the callers that he placed his number on the National Do Not Call Registry.

51. During one call with a Humana representative, the representative expressed surprise that Mr. Coleman was still receiving calls as Humana's records reflected his opt-out requests and preference not to be contacted by phone.

52. Mr. Coleman never provided prior express consent to Medwatchers for these telephone calls.

53. In addition, Mr. Coleman repeatedly asked not to be called and revoked any consent

that may have existed.

## HUMANA'S EFFORTS TO CONCEAL THE FACTS

54. On December 1, 2022, Mr. Coleman contacted Humana, via its legal counsel, and provided two copies of the Medwatchers' prerecorded messages to Humana.

55. Mr. Coleman asked Humana to identify the third party that made the calls to Mr. Coleman that resulted in these prerecorded messages.[7]

56. Mr. Coleman also asked Humana to confirm that these calls were, in fact, prerecorded messages.

57. Upon information and belief, Humana knew that these calls were placed by Medwatchers.

58. Upon information and belief, both Humana and Medwatchers knew that these calls were prerecorded calls.

59. On December 14, 2022, Humana contacted Mr. Coleman and (1) refused to identify the caller; and (2) advised that the two recordings were <u>not</u> prerecorded messages and instead were live calls. This was a misrepresentation of fact.

60. Upon information and belief, this misrepresentation was made to conceal vital facts for the purpose of preventing or delaying Mr. Coleman from bringing a claim against Huamna's vendor, Medwatchers, for its unwanted prerecorded calls.

61. The dialogue in each prerecorded message received by Mr. Coleman has precisely the same overall length, phrasing, tonality, dynamic range, pauses, breaths and speech pattern.

62. Upon synchronization of the audio in waveform view, the identical dialogue can be seen visually:

---

[7] Mr. Coleman contacted Humana in an attempt to identify the caller because the calls at issue do not identify the caller, and state only they are made "on behalf of Humana." *See,* para. 26, *supra.*



63. These waveforms match on a micro-scale, as well. Below is a 3/100ths of a second portion of the waveforms shown above. They are identical.



8

## DEFENDANT'S LIABILITY

64. Medwatchers placed, and continued to place, calls to Mr. Coleman's cellular telephone number that utilized an artificial or prerecorded voice after Mr. Coleman repeatedly requested that the calls stop.

65. Mr. Coleman communicated his requests that the calls stop to Medwatchers and Humana.

66. Accordingly, each of Medwatchers' calls to Mr. Coleman using an artificial or prerecorded voice violated 47 U.S.C. § 227(b).

67. For violations of 47 U.S.C. § 227(b), Mr. Coleman is entitled to a minimum of $500 per call.

68. Mr. Coleman is entitled to $1500 per call if Medwatchers' actions are found to be knowing or willful.

69. Mr. Coleman has suffered concrete harm because of Medwatchers' unwanted and unsolicited calls, including, but not limited to:

- Device storage;
- Lost time tending to and responding to the unsolicited calls and voicemails;
- Invasion of Privacy; and
- Nuisance.

70. These forms of actual injury are sufficient for Article III standing purposes.

71. To the extent Medwatchers is not directly liable for the calls at issue, Medwatchers is liable for each of the violating calls under one or more theories of vicarious liability.

72. To the extent Medwatchers subcontracted out the actual act of making the prerecorded calls to a third-party vendor, Medwatchers is vicariously liable for the prerecorded

calls placed by its third-party vendor because Medwatchers authorized the calls.

73. In addition, Medwatchers provided its third-party vendors with access to information and systems that normally would be in Medwatcher's exclusive control.

74. Alternatively, Medwatchers ratified the TCPA violations by knowing facts that would cause an ordinarily prudent person to inquire as to whether its third-party vendors were complying with the TCPA.

75. The exact relationships Medwatchers has with any applicable third parties are currently known only to Medwatchers and will be revealed during the discovery process.

## CLASS ACTION ALLEGATIONS

76. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of the TCPA 227(b) Class as defined as follows:

## THE TCPA CLASSES

Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification (1) Medwatchers (or an agent acting on behalf of Medwatchers) called on their cellular telephone number (2) using a prerecorded voice message (3) for the same purpose the Plaintiff was called.

("TCPA 227(b) Class" or "Class")

Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification (1) Medwatchers (or an agent acting on behalf of Medwatchers) called on their cellular telephone number (2) using a prerecorded voice message (3) for the same purpose the Plaintiff was called. (4) after a date Medwatchers or Humana's records indicate the called party opted out of the program Medwatchers was calling about and/or requested not to be called.

("TCPA 227(b) Subclass" or "Subclass")(the Class and Subclass together, the "Classes").

77. Excluded from the Classes are Defendant and any entities in which Defendant have a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

78. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

79. The exact number and identities of the persons who fit within the Classes are ascertainable in that Medwatchers and Humana maintain written and electronically stored data showing:

   a. The time period(s) during which Medwatchers placed its calls;

   b. The telephone numbers to which Medwatchers placed its calls;

   c. The telephone numbers for which Medwatchers or Humana had prior express consent;

   d. The telephone numbers for which Medwatchers or Humana received opt-out requests and/or do-not-call requests;

   e. The purposes of such calls; and

   f. The names and addresses of Class members.

80. The Classes are comprised of hundreds, if not thousands, of individuals.

81. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

   a. Whether Medwatchers (or someone acting on its behalf) used a prerecorded voice in placing its calls;

   b. Whether Medwatchers (or someone acting on its behalf) obtains prior express consent;

   c. Whether Medwatchers (or someone acting on its behalf) honors opt-out or do-not-call requests;

d. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

e. Whether Medwatchers should be enjoined from engaging in such conduct in the future.

82. Mr. Coleman is a member of the Classes in that Medwatchers placed prerecorded calls to his cellular telephone after he repeatedly requested to receive no further calls and opted out of the optional program.

83. Mr. Coleman's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

84. Mr. Coleman and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Medwatchers' unwanted calls and suffered a nuisance and an invasion of their privacy.

85. Mr. Coleman has no interests antagonistic to, or in conflict with, the Classes.

86. Mr. Coleman will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

87. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

88. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

89. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

90. Common questions will predominate, and there will be no unusual manageability issues.

## CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Classes)

91. Mr. Coleman and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

92. Medwatchers placed, or had placed on its behalf, prerecorded telephone calls to Mr. Coleman's and Class Members' telephone numbers without prior express consent.

93. The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

94. Defendant has therefore violated 47 U.S.C. § 227(b).

95. As a result of Defendant's unlawful conduct, Mr. Coleman and the Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

96. Mr. Coleman and the Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Coleman, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Mr. Coleman as the representative of the Classes, and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b);

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages;

F. An award of reasonable attorneys' fees and costs; and

G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Mr. Coleman requests a trial by jury of all claims that can be so tried.

Dated: March 17, 2023
/s/ Craig Shapiro
Craig Shapiro (State Bar # 48887)
Shapiro Law Office, PLLC
644 Holly Springs Road, Suite 195
Holly Springs, North Carolina 27540
(919) 480-8885
craig@shapirolawofficepllc.com

/s/ Max S. Morgan
Max S. Morgan, Esquire
Eric H. Weitz, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com
(Special Appearances to be filed)